MARSTELLER *v.* MARTIN, ET UX.

[No. 178, September Term, 1967.]

*Decided April 4, 1968.*

The cause was argued before HORNEY, MARBURY, MCWIL-LIAMS, FINAN and SINGLEY, JJ.

*David Macdonald* for appellant.

*Joe M. Kyle,* with whom was *Kyle & Jorgensen* on the brief, for appellees.

MCWILLIAMS, J., delivered the opinion of the Court.

Appellant (Marsteller) is a real estate broker. His suit to recover a $36,000 commission from appellees (Martin) ended abruptly when the trial judge directed a verdict for Martin at the conclusion of Marsteller's case. The transaction out of which Marsteller's claim arose is as unusual as it is involved.

In the spring of 1962 Martin [1] owned 8.2822 acres of land in the Greenbelt area of Prince George's County. He asked Marsteller to find someone who would be willing to lend money on the property. Marsteller produced Alfred Stidham with whom an arrangement was eventually negotiated. The essential details of their agreement, dated 14 August 1962, are set forth below:

1. Stidham agreed to lend Martin $180,000 for 2½ years at 6%, to be secured by a first deed of trust on the 8.2822 acres.

2. Martin agreed to trade Parcel A (2 acres of the 8.2822 acres) for Lot 46 (owned by Stidham and located in the District of Columbia) provided the 8.2822 acres, or the major portion thereof, could, within 7 months, be rezoned I-1 (Industrial, Light) and provided also an entrance thereto from Kenilworth Avenue could be obtained.

---

1. Robert Solomon and wife owned a ½ interest in the land but in 1963, Solomon having become bankrupt, they conveyed their interest to Martin. In May 1967 Marsteller obtained a default judgment against the Solomons for $36,000. In this opinion we shall regard Martin as the sole owner.

3. Martin gave Stidham an option for 3 years from the date of settlement of the exchange of Parcel A for Lot 46 to purchase the remainder of the 8.2822 acres for $300,000. In the event the exchange was not consummated (it was not) Martin gave Stidham an option to purchase the entire 8.2822 tract, at any time before 31 December 1965, for $450,000.

4. Martin agreed "to pay the real estate commission due * * * Marsteller for services rendered in negotiating this agreement *in accordance with a separate agreement between them.*" (Emphasis supplied.)

Settlement took place on 5 September 1962. For reasons not disclosed in the record Martin and Stidham executed another agreement, dated 5 September 1962, which restated the terms of the options but omitted any mention of the $180,000 loan. The paragraph dealing with Marsteller's commission was repeated verbatim, except for the insertion of the word "option" so as to read "in negotiating this *option* agreement." The attorney who conducted the settlement of the loan paid Marsteller $6000 in cash. Martin gave him a 90 day note for an additional $3000. It is conceded this note has been paid.

Marsteller testified that, after the settlement, the fact that he had nothing in writing concerning his commission "started worrying" him. On 8 October 1962 Martin and Marsteller executed an agreement, dated 5 September 1962, the essential details of which are as follows:

1. For procuring the $180,000 loan Martin agreed to pay Marsteller a fee of $9000. (As has been said, $6000 of this had already been paid and Marsteller had the 90 day note for the remaining $3000.)

2. For procuring the option to buy the remainder of the 8.2822 acre tract for $300,000 Martin agreed to pay Marsteller $30,000 *"to be paid at settlement if said option is exercised."* (Emphasis supplied.)

3. "For procuring the exchange * * * of Parcel A for Lot 46" Martin agreed to give Marsteller an exclusive listing, for an indefinite period, to sell Lot 46 and to pay "a commission equal to 10% of the gross sales price, less,

however, the sum of $9000." Martin reserved the right to cancel the listing but he agreed to pay Marsteller $6000 if he did so. Martin also agreed (if the exchange took place) to pay Marsteller $6000 if Lot 46 was still unsold on 31 March 1964.

The rezoning had not been accomplished by 5 April 1963, when the 7 month period expired. In fact, it was never accomplished. This was a condition precedent for the exchange which, of course, likewise never came to pass. On 30 January 1964 Stidham and Martin modified the agreement of 5 September 1962, the effect of which was that Stidham waived the interest on the note and Martin reduced the option price from $450,000 to $369,000. No change was made in the due date (1 March 1965) of the note.

On 20 November 1964 Martin borrowed an additional $120,-000 from a source other than Stidham. This was secured by a second trust on the 8.2822 acres. On 1 March 1965 the $18,000 became due and payable. Martin defaulted and Stidham instructed his attorneys to begin foreclosure proceedings. To avoid a foreclosure sale, Stidham agreed, after much discussion, to cancel the $180,000 note, assume the $120,000 trust and pay Martin $45,000 in cash for a deed to the 8.2822 acres. Settlement was concluded on 10 April 1965.

In his declaration, filed 7 October 1965 in the Circuit Court for Montgomery County, Marsteller alleged that he "procured * * * Stidham * * * as purchaser of 8.2822 acres" for which Martin (and Solomon) agreed "to pay * * * [him] a commission of $36,000 at settlement" and that settlement "was held on or about April 1, 1965."

At the trial before Pugh, J., and a jury, on 20 March 1967, Marsteller, while insisting he was entitled to $36,000 ($45,000 less the $9000 already received), conceded that his right to recover must be found in the agreement with Martin which was signed 8 October 1962. He said it was "the only thing * * * [he had]." Our inquiry will be aimed at the question whether he has brought himself within the terms of his agreement which, it will be noted, presents a situation somewhat different from what was alleged in the declaration. *Robert H. Kent & Co. v. Burton,* 248 Md. 693, 237 A. 2d 736 (1968).

We need not, of course, concern ourselves with the $9000 paid to Marsteller for procuring the $180,000 loan. Nor is it necessary for us to consider the 10% commission, minus $9000, to be paid for selling Lot 46, or the $6000 if Lot 46 was acquired but not sold by 31 March 1964. Martin never acquired Lot 46 because the failure of his efforts to obtain the zoning and the road made the proposed exchange impossible. We shall be concerned only with the paragraph dealing with the $30,000 commission.

There is no blinking the fact that the exercise by Stidham of the option to buy 8.2822 acres (minus Parcel A) for $300,000 is a condition precedent to the payment of the $30,000 commission. Another, albeit less conclusive condition, is that it is payable, if at all, only at settlement. *Borowski v. Meyers*, 195 Md. 226, 72 A. 2d 701 (1950). Stidham did not exercise the option nor did Martin ever convey to Stidham the 8.2822 acre tract (minus Parcel A) for $300,000, or any other sum of money. What Marsteller's rights might have been had Stidham exercised his option to buy the 8.2822 acres for $450,000 is a question we need not consider, since it did not happen. We point out, however, that such an option appears in the agreements of 14 August 1962 and 5 September 1962, both of which are attached as exhibits to the commission agreement of 8 October 1962. How else can be explained the fact that the commission agreement makes no provision for payment in the event of the exercise of the $450,000 option than that the parties did not intend any such provision. Marsteller complains that Martin and Stidham amended the agreement without consulting him. However, he was not a party to the agreement and it was not shown that they did not have a perfect right to do so nor that they were in any sense actuated by fraud or bad faith. That Martin was plagued with a shortage of cash is not disputed and his agreement to reduce the option price from $450,000 to $369,000 in exchange for a waiver of interest on the note can hardly have been born of anything but necessity. Indeed, within a few months, his plight became painfully evident when he was obliged to default in the payment of the $180,000 note. Marsteller insists that Stidham, in effect, did exercise his option when he decided to take a deed from Martin for $345,000 rather than

press the foreclosure to a conclusion. We see little merit in that argument. Stidham had no right to a conveyance for anything less than $369,000. Of course, he could have gone ahead with the foreclosure but, assuming a continuing interest in acquiring the property, he had no way of knowing what the outcome might be. Competitive bidding might have generated a price higher than he was willing to pay. Neither could Martin be certain of the end result. The property might not bring enough at a foreclosure sale to pay the debts and expenses. They hedged the uncertainties that lay ahead. Stidham bought at a reduced price. Martin got clear of the debts and wound up about $40,000 (instead of $145,000) in the clear. We find incredible the notion that Martin contrived a series of events which resulted in his receiving $105,000 less than the agreements were designed to produce merely to euchre Marsteller out of a commission. In our judgment the very least that Marsteller was obliged to establish was a conveyance from Martin to Stidham of the 8.2822, less Parcel A, for a consideration of $300,000, from which, of course, a presumption would seem to arise that the option had, in fact, been exercised. This he has not done and this, he agreed, would be the contingency upon which his right to payment would depend.

*Judgment affirmed.*
*Costs to be paid by the appellant.*